UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

KRISTIN SWEARINGEN,

Case No. 3:19-cv-1156-JR

Plaintiffs,

v.

FINDINGS AND
RECOMMENDATION

AMAZON.COM SERVICES, INC. and
AMAZON.COM INC., Delaware corporations,
and, AMAZON.COM.DEDC, LLC,
a Delaware limited liability company,

Defendants.

RUSSO, Magistrate Judge:

Plaintiff brings an action under state wage and hour laws against defendant Amazon arguing she is entitled to recover unpaid wages and penalty wages.[1] Plaintiff alleges Amazon rounded time clock punches resulting in a consistent net underpayment to plaintiff and the purported class members. Plaintiff also alleges Amazon failed to pay for breaks of fewer than 30 minutes resulting in further underpayment. In addition, plaintiff asserts Amazon failed to pay all

---

[1] Defendants are Amazon.com Services, Inc., Amazon.com Inc., and Amazon.com.dedc, LLC. Amazon.com.dedc. LLC was merged into Amazon.com Services LLC (formerly Amazon.com Service, Inc.) on January 1, 2019.

Page 1 – FINDINGS AND RECOMMENDATION

earned wages within the statutory deadline upon plaintiff's employment termination as well as that of the purported class members. Plaintiff now moves to certify the following two classes:

> a. The Rounding Class, consisting of all current and former Amazon employees who performed work in Oregon "fulfillment center" facilities (i.e., excluding data center employees), in any workweek the regular payday for which was on or after December 20, 2012 and on or before April 15, 2019, during which they lost time due to Amazon's rounding policy, who do not file a timely request to opt-out of the Class; and
>
> b. The Unpaid Break Class, consisting of all current and former Amazon employees who performed work at any Oregon facility in any workweek the regular payday for which was on or after December 20, 2012 and on or before April 15, 2019, during which they had a clocked-out break (i.e., either a rest period or a meal period) of fewer than 30 minutes, who do not file a timely request to opt-out of the Class;

Motion to Certify (ECF 61) at pp. 1-2.

## BACKGROUND

Amazon employs thousands of hourly employees at its order fulfillment centers. These employees clock-in and clock-out with their ID badges at timeclocks in their facilities.

> Amazon provides a 5-minute grace period to account for unanticipated situations that may delay start time or cause an early punch out before and after your shift. This grace period does not affect pay. However, it indicates when your scheduled time must be covered by one of your time off options.
>
> For payroll purposes in punches and out punches which occur within 5 minutes of the start and end time will be rounded to the scheduled shift start or end time (e.g., a time punch that occurs 5 minutes prior to or after the start of the shift will be rounded to the scheduled start time). **All other time punches will be coded to the minute.**

Policy: Attendance Policy – US Fulfillment Center at p. 3 (attached as Ex. 1, p. 2 to the Declaration of John Egan (ECF 62).

> Amazon expects you to make every effort to work your scheduled shifts. Amazon understands that due to unforeseen or uncontrollable circumstances in life, we will not all be able to have perfect attendance. That is why we offer a variety of flexible time off options. **However, irregular attendance patterns or concerns,**

> **such as repeatedly reporting late or leaving early, including within the grace periods, will be addressed through performance management using coaching and corrective actions.**

Id. (Emphasis added).

After employees clock-in, their day starts with a stand-up meeting. Deposition of Alexsis Stephens at p. 37 (attached to the Declaration of Kevin Gaffney as Ex. A (ECF 72-1) at p. 8). Employees receive their work assignments at this meeting. Id. During the rounding period, but before the scheduled shift start or end, employees are free to do whatever they want. Id. at p. 82; see also id. at p. 37 ("We don't require that our associates be at their work-station outside of their scheduled shift. We don't ask them to be at their work-station or anywhere specific outside of their scheduled shift.").

> All associates working more than five hours are required to take a work-free 30-minute meal period….
>
> The meal period for associates working in California, Illinois, Kentucky, New Hampshire, Oregon, and Washington State must start no later than five hours into the associate's shift.
>
> ….
>
> Meal periods are not paid and not counted towards hours worked. During meal periods, associates must not perform any work. Associates are required to record the start and end time of each meal period. For facilities equipped with time-clocks, associates are required to punch in at the start and end time of each meal period.

Policy: U.S. Working Hours (None-Exempt/Hourly) Policy at p. 2 (attached as Ex. 2, p. 2 to the Declaration of John Egan (ECF 62).

Amazon took a number of measures to ensure employees received a full work-free 30-minute meal period: (1) in most buildings the majority of the employees were given their break at the same time and the conveyor belt is shut down; (2) employees received a three-minute grace period regarding the timing of return to work from meal breaks; and (3) Amazon eventually implemented a meal period "lockout" functionality on the time clocks preventing associates from

Page 3 – FINDINGS AND RECOMMENDATION

clocking back in within the 30-minute period. Defendants' Motion for Partial Summary Judgment (ECF 65) at p. 4.

In records produced thus far, plaintiffs show via the table below: the number of employees who had a net loss from rounding; the number of rounds; the number of positive rounds (i.e., that resulted in a gain of time to the employee); the number of negative rounds (i.e., that resulted in a loss of time to the employee); the total hours rounded (with negative indicating a loss of time to the employee); the total amount of time that employees gained through rounding; and the total amount of time that employees lost through rounding, for each facility in the rounding class.

| Facility | No. Ees with net loss | No. rounds | Pos. rounds | Neg. rounds | Total hours rounded | Pos. hours rounded | Neg. hours rounded |
|---|---|---|---|---|---|---|---|
| DPD1 - Del Stn Portland, OR | 2,108 | 171,391 | 48,323 | 123,068 | - 5,361.68 | 2,046.77 | - 7,408.45 |
| PDX5-Sort Center Portland,OR | 3,533 | 513,662 | 43,318 | 470,344 | - 25,219.53 | 1,687.97 | - 26,907.50 |
| PDX9 - FC ARS Troutdale, OR | 4,070 | 255,019 | 46,290 | 208,729 | - 10,789.60 | 1,363.05 | - 12,152.65 |
| UOR1 - UrbanFC Portland, OR | 587 | 96,244 | 39,618 | 56,626 | - 1,076.22 | 1,804.07 | - 2,880.28 |
| Totals | 10,298 | 1,036,316 | 177,549 | 858,767 | - 42,447.03 | 6,901.85 | - 49,348.88 |

Declaration of Michele Lauzier (ECF 63) at ¶ 3.

Additionally, the records produced reflect (as shown in the table below) : the number of employees who had unpaid breaks of fewer than 30 minutes; the number of such unpaid breaks; and the total amount of unpaid break time, for each facility

| Facility | Employees w short brks | No. short breaks | Total short hours |
|---|---|---|---|
| DPD1 - Del Stn Portland, OR | 827 | 7,267 | - 3,284.38 |
| PDX50 - DataCenter Boardman,OR | 78 | 2,081 | - 760.47 |
| PDX51-Data Center Umatilla | 85 | 1,718 | - 656.88 |
| PDX52- DC Boardman,OR | 45 | 1,101 | - 449.78 |
| PDX53-Data Center Boardman,OR | 42 | 1,030 | - 408.97 |
| PDX54-Data Center Umatilla,OR | 40 | 557 | - 207.43 |
| PDX55-DataCenter Boardmam,OR | 30 | 940 | - 382.82 |
| PDX56-Data Center Boardman,OR | 34 | 907 | - 330.33 |

| | | | |
|---|---|---|---|
| PDX57-Data Center Umatilla,OR | 39 | 839 | - 344.02 |
| PDX58-Data Center Boardman,OR | 21 | 729 | - 299.88 |
| PDX59-Data Center Boardman,OR | 20 | 329 | - 143.43 |
| PDX5-Sort Center Portland,OR | 279 | 415 | - 143.05 |
| PDX9 - FC ARS Troutdale, OR | 747 | 894 | - 364.08 |
| UOR1 - UrbanFC Portland, OR | 280 | 2,584 | - 1,006.87 |
| Totals | 2,567 | 21,391 | - 8,782.40 |
| | | | |

Declaration of Michele Lauzier (ECF 63) at ¶ 4.

## DISCUSSION

A member of a class may sue as a representative party on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). If these requirements are satisfied, then a class action may be maintained if:

(1) prosecuting separate actions would create the risk of varying adjudications establishing incompatible standards or an imposition on the ability of individual class members to protect their interests; (2) the party opposing has acted on grounds that apply generally to the class, so that final injunctive or declaratory relief is appropriate respecting the class as a whole; or (3) questions of law or fact common to class members predominate over questions affecting individual class members and a class action is superior other adjudicative methods. Fed. R. Civ. P. 23(b). Whether to certify a class is within the discretion of the Court. United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Service Workers Int'l Union, AFL–CIO CLC v. ConocoPhillips Co., 593 F.3d 802, 807 (9th Cir. 2010).

The party seeking certification bears the burden of showing the proposed class meets the requirements of Federal Rule of Civil Procedure 23(a) and (b). See id. Although a court should

Page 5 – FINDINGS AND RECOMMENDATION

accept the substantive allegations of the complaint as true, a court must also consider the nature and range of proof necessary to establish those allegations and conduct a "rigorous analysis" to determine whether the claim satisfies Rule 23(a) requirements. General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 160-61 (1982); see also Zinser v. Accuflx Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001). Thus, this Court may look to supplemental information to "allow an informed judgment." Id. Although it may be necessary to inquire into the substance of a case to ascertain satisfaction of the Rule 23 requirements, the Court should not "advance a decision on the merits to the class certification stage." Staton v. Boeing Co., 327 F.3d 938,954 (9th Cir. 2003).

A.     Numerosity

Rule 23(a)(1) requires the proposed class to be so numerous that joinder of all of the class members would be impracticable. Fed. R. Civ. P. 23(a). Impracticability does not mean impossibility, but only the difficulty or inconvenience in joining all members of the class. Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913–14 (9th Cir. 1964). Additionally, the exact size of the class need not be known so long as "general knowledge and common sense indicate that it is large." Perez-Funez v. Dist. Dir., 611 F.Supp. 990, 995 (C.D. Cal. 1984).

Plaintiff presents evidence that Amazon employed approximately 10,982 hourly employees between December 20, 2012, and February 26, 2019 at just one of Amazon's Oregon facilities with approximately 6,372 employees having ended their employment. Plaintiff asserts that during this period about 10,298 employees had a net loss of time during at least one workday due to the rounding policy and 2,567 employees who had a clocked-out break of fewer than 30 minutes. Defendants do not dispute the proposed class is too numerous for joinder and the Court recommends a finding that the numerosity requirement is met for both classes

B.  Commonality

> A class has sufficient commonality "if there are questions of fact and law which are common to the class." Fed. R. Civ. P. 23(a)(2). The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3). Indeed, Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

Plaintiff brings three causes of action under Oregon law: (1) unpaid wages pursuant to Or. Rev. Stat. § 652.120 (rounding class); (2) unpaid wages upon termination pursuant to Or. Rev. Stat. § 652.140 (rounding class); and (3) unpaid breaks pursuant to Or. Rev. Stat. § 653.261 (unpaid break class).

Plaintiff has demonstrated that the rounding and meal break policies were common to all Oregon fulfillment centers for the entirety of the periods in question. Defendants assert plaintiff has failed to show how the rounding policy and meal break policies result in the class-wide failure to pay compensable time. Specifically, defendants state multiple class members testified that they clocked-in early or clocked-out late voluntarily and used rounded-out time to engage in personal, non-compensable related activities, such as socializing, using the restroom, stretching, or filling their water bottles. Additionally, defendants assert that liability for meal break violations does not arise simply because someone clocked in less than 30 minutes after they had clocked out—it only matters if defendants failed to provide an opportunity to take a full meal break.

Although, the Court does not determine the merits of the claims at the certification stage, it does need to inquire into the substance of the unpaid wages and break claims in order to ensure the Rule 23 requirements are met.

1. Rounding Class

The policies at issue do subject employees to performance management, using coaching and corrective action, when there exists patterns or concerns such as repeatedly reporting late or leaving early, even when that pattern is within the grace periods. Plaintiff asserts that the policies combine to result in thousands of lost hours rather than a net gain for employees because they are subject to this performance management. This analysis of the policies as applied to the class dovetails with the predominance inquiry under Rule 23(b)(3).

Every employer must keep records of the actual hours worked. Or. Rev. Stat. § 653.045(1)(b). "Work time" includes both time worked and time of authorized attendance Or. Rev. Stat. § 653.010(11).

Under Rule 23(b)(3), the predominance requirement is similar to the Rule 23(a)(2) commonality requirement, but the standard is much higher. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 359 (2011).

Fed. R. Civ. P. 23(b)(3) states:

> questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>> (D) the likely difficulties in managing a class action.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods. v. Windsor, 521 U.S. 591, 623 (1997).

> Rule 23(b)(3) focuses on the relationship between the common and individual issues. When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis. …[T]the examination must rest on legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement.

Hanlon, 150 F.3d at 1022.

A district court must find by a preponderance of the evidence that the plaintiff has established predominance under Rule 23(b)(3)." Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC, 993 F.3d 784 (9th Cir. 2021).

Defendant notes a recent Findings and Recommendation issued by Magistrate Judge Barbara A. McAuliffe of the Eastern District of California accepting Amazon's argument that proposed rounding classes, such as the one requested here, require foundational evidence that employees were actually working when they clocked in early or clocked out late within the five minute grace periods and that thus individual questions predominate. See Trevino v. Golden State FC LLC, 2021 WL 2328414, at *19-21 (E.D. Cal. June 8, 2021). However, Judge McAuliffe relied on a federal regulation which allows, where time clocks are used, a practice of recording employees' starting and stopping time to the nearest 5 minutes, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked. 29 C.F.R. § 785.48(b). Further, Judge McAuliffe noted that under controlling California law, plaintiff must either demonstrate proposed class-members who clocked in early or out late that they were in fact working or that they were required to remain on premises during the grace period. Id. at *21. Because Amazon presented evidence, as they do here, that employees engaged in personal conduct during the grace period and plaintiff presented no evidence that employees could not leave during the period, class certification was not

appropriate given that individual questions regarding unpaid work predominated. Importantly, for purpose of employer control, Amazon presented evidence that there were no consequences for clocking-in late or out early within the grace period. Id. As noted, above, plaintiff notes Amazon's policy of performance management using coaching and corrective actions if employees repeatedly reported late or left early, including within the grace periods.

In addition, Oregon law controls in this case. Under Oregon law, "Hours worked" means all hours for which an employee is employed by and required to give to the employer and includes all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed work place and all time the employee is suffered or permitted to work. Or. Admin. R. 839-020-0004(19). Employees are not required to be working in the colloquial sense the entire time that they are considered to be "working" for purposes of wage and hour laws. The fact that a 10–minute rest break is too short to enable an employee to use the time effectively for his or her own purposes suggests that the employee is "working" for purposes of the wage and hour laws. Gafur v. Legacy Good Samaritan Hosp. & Med. Ctr., 344 Or. 525, 534-35, 185 P.3d 446, 451-52 (2008).

Of course, the rounding policy at issue does not involve short breaks, it involves employees arriving for work a few minutes early or leaving a few minutes late. Certainly, the five-minute period is too short to effectively call the time personal, but at the same time, employees are not required to clock-in early or late but may clock-in or out exactly on time with no consequences. Nonetheless, the fact that arriving a few minutes late or leaving a few minutes early may result in "corrective action" provides incentive to ensure timeliness and an err on the side of caution.[2]

---

[2] In addition, Amazon's policy does compute every minute outside the grace period. This indicates that Amazon does not consider the time before and after a shift as "unauthorized." See Or. Rev. Stat. § 653.010 ("Work time" includes time of authorized attendance).

Page 10 – FINDINGS AND RECOMMENDATION

Indeed, plaintiff presents significant evidence that the policy inures to the benefit of Amazon and against the employee. The benefit, however, does not appear to be in the form of actual work performed for defendant[3] but only appears to incentivize on-time arrival and departure.

The question then becomes whether plaintiffs must show actual work activity during the grace periods (an individualized inquiry)[4] or whether the grace period represents "authorized attendance" under Oregon's labor laws. See Or. Rev. Stat. § 653.010(11) ("Work time" includes both time worked and time of authorized attendance). At this stage of the litigation, the Court need not resolve whether the policy required proposed class members to engage in compensable "work time" only that there are common questions that predominate as to whether Amazon had a policy of failing to compensate for that time. Here, Amazon arguably "authorized" employees to clock-in five minutes early or clock-out five minutes late in order to benefit itself to ensure shift work began and ended on-time.[5] In this sense, the activities the proposed class-members engaged in during the grace period are insufficient to defeat certification. Cf. Harrison v. Harry & David Operations, Inc., 2020 WL 8367533, at *7, *8 (D. Or. Oct. 21, 2020), report and recommendation adopted, 2021 WL 1135022 (D. Or. Mar. 24, 2021) (different activities employees engaged in between the time they arrived on the premises and the time they clocked-in are not enough to defeat Rule 23 class certification where employer had a common practice of requiring employees to engage in tasks at the start and end of their shifts, as well as at the start and end of their meal breaks, for which they are not compensated).

---

[3] As noted, defendant submits evidence that the employees used the extra time when clocking-in early or out late for their own personal business. Plaintiff has not submitted evidence demonstrating work was performed for Amazon during the grace period. Plaintiffs do, nonetheless, demonstrate that the policy generally resulted in employees being on-time and ready to work at the stand-up meeting which likely ensure efficient operations.

[4] Plaintiff presents no evidence that proposed class members were required to perform certain activities prior to clocking in.

[5] Work means physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and their business. Leonard v. Arrow-Tualatin, Inc., 76 Or. App. 120, 124, 708 P.2d 630, 632 (1985)

Page 11 – FINDINGS AND RECOMMENDATION

Because "work time" in Oregon includes authorized attendance, the evidence cited by Amazon regarding personal activities during the grace period does not demonstrate the proposed class members did not engage in "work time." The Oregon Court of Appeals exemplified how the inquiry is capable of a class-wide determination:

> [S]imply because there was witness testimony of time spent on personal tasks, such as putting on a coat, stowing lunches, or using the bathroom, defendant was not entitled to individualized inquiries to determine what class members were doing with their time during unpaid work periods. Defendant has not provided the legal basis for why a "personal task" such as putting away a coat or using the bathroom is time that is not compensable. Under the wage and hour statutes, "work time" includes "both time worked and time of authorized attendance."
> ….
> Plaintiff's off-the-clock claim is that employees were required to be on defendant's premises before they were able to clock in and after they clocked out. Defendant fails to develop an argument that, under Oregon's wage and hour laws, time spent on "personal tasks" during the time an employee is required to be on his or her employer's premises is time that is not compensable.
> Accordingly, we reject defendant's contention that whether an employee spent time on personal tasks during the opening and closing of stores is an individualized and material fact that predominates over common issues of fact.

Migis v. AutoZone, Inc., 282 Or. App. 774, 787–788 (2016).

The main issue the class must show as a whole is whether the clock-in and clock-out records show "authorized attendance" and that it is susceptible to resolution on a class-wide basis rather than an individual basis given the policy at issue. Accordingly, the Court should find both the commonality and predominance factors have been met for the rounding class.

2.  Unpaid Break Class

Plaintiff alleges Amazon was required to pay members of the unpaid break class for meals of less than 30 minutes.

Every employer is required to provide a 30-minute meal break for each work period of not less than six hours and if the employee is not relieved of all duties for 30 continuous minutes during the meal period, the employer must pay the employee for the entire 30-minute period. Or.

Page 12 – FINDINGS AND RECOMMENDATION

Admin. R. 839—020-0050. Defendants assert it need only offer the 30-minute duty-free period and liability attaches only if they fail to offer the duty-free period. Accordingly, defendants argue the inquiry as to whether any proposed class member is entitled to compensation for any given 30-minute meal period requires an individualized assessment of whether an employee was duty-free for 30 continuous minutes and if not, why?

Seven months after the end of the proposed class period in this case, the Oregon Court of Appeals issued a decision requiring employers to ensure the full 30 minutes is used and not merely offered. Maza v. Waterford Operations LLC, 300 Or. App. 471 (2019). Accordingly, plaintiffs argue the assessment is a class-wide inquiry as to whether Amazon mandated the full 30 minutes to employees and policed that offer to make certain the full break was used. However, Judge Anna Brown of this Court has determined Mazza is not retroactively applicable:

> before Maza Oregon courts had not interpreted Oregon Administrative Rule 839-020-0050 to require an employer to pay an employee for a full 30-minute meal period when the employee did not take a full 30-minute meal period and the employer did not require the employee to return early from his meal period. As noted, the court held in Maza that the language of 839-020-0050 "means that a 30-minute meal [period] is mandatory and, if not taken, the employer must pay the employee's wages for the full 30-minutes" regardless of the reason the employee did not take the full meal period. This Court agrees with Defendant that the Maza court's interpretation of Oregon Administrative Rule 839-020-0050 is a substantive change in employers' duties and obligations as to meal periods. The Court, therefore, declines to apply the Maza court's holding retroactively because "doing so [would] ..., create new obligations or impose additional duties with respect to [Defendant's] past acts." Tucker, 90 Or. App. at 509. Thus, the Court concludes the individualized inquiry related to Plaintiffs' unpaid break claims exceeds the common class questions, and, therefore, resolution of the unpaid break claims is not amenable to efficient class-wide resolution.

Gessele v. Jack in the Box, Inc., 2020 WL 9814402, at *12 (D. Or. June 5, 2020).

Maza does not concern a new regulation, it concerns interpretation of an existing regulation. The Oregon Supreme Court has indicated that when the Oregon Courts announce a new interpretation of statute, it should apply both prospective and retroactively:

Page 13 – FINDINGS AND RECOMMENDATION

> Plaintiffs finally argue that, if we conclude that ORS 20.080(2) does not impose a prelitigation demand-letter requirement, we should apply that interpretation only prospectively. Citing Schlimgen v. May Trucking Co., 335 Or. 143, 152, 61 P.3d 923 (2003), and Peterson v. Temple, 323 Or. 322, 332, 918 P.2d 413 (1996), they argue that their reliance on Bennett throughout the litigation of this case justifies the exercise of this court's discretion not to apply the statute to them.
>
> The cases on which plaintiffs rely, however, pertain to this court's decision whether to give only prospective effect to a rule of its own making. None concerns whether this court has discretion to give such limited effect to its interpretation of a legislative enactment. [footnote omitted] We are not persuaded that we have, or should exercise, discretion to apply our decision in this case prospectively only.

Halperin v. Pitts, 352 Or. 482, 497, 287 P.3d 1069, 1077 (2012). Indeed, the Halperin Court noted that the exercise of judicial discretion to apply interpretations of statutes only prospectively may raise significant constitutional issues concerning justiciability, equal treatment, and separation of powers. Id at 497, n.4, 287 P.3d at 1077, n.4. Nonetheless, prohibition on retroactive application of a new court statutory interpretation is not set in stone:

> We find no express Oregon holding that a lower court or tribunal has or does not have authority to decide whether a higher court's opinions are to be applied retroactively or prospectively. However, the question has been implicitly answered by opinions of the Oregon Supreme Court in which it has decided whether United States Supreme Court decisions should apply retroactively. See State v. Evans, 258 Or. 437, 483 P.2d 1300 (1971). We see no reason why the question of retroactive operation should not come within the general principle that lower courts or tribunals have authority to decide all questions of law that higher courts have not decided. The principal consideration that has motivated courts to make "overruling" decisions nonretroactive is the prevention of "detriment [to] litigants who have justifiably relied on the overruled precedent."

U.S. Nat. Bank v. Wagoner, 71 Or. App. 266, 269–70, 692 P.2d 149, 151 (1984).

I agree with Judge Brown that making Maza retroactive would have a detrimental effect on employers like Amazon who have justifiably relied on prior regulatory interpretations. Accordingly, because the pre-Maza interpretation of the rule would entail individualized inquiries related to the unpaid break claim, it exceeds the common class questions, and, therefore, resolution of the unpaid break claims is not amenable to efficient class-wide resolution. The Court should

Page 14 – FINDINGS AND RECOMMENDATION

find this factor has not been met for the unpaid break class.

C.   Typicality

The typicality prerequisite of Rule 23(a) is fulfilled if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Under the rule's permissive standards, representative claims are "typical" if they are reasonably co-extensive with those of absent class members; they need not be substantially identical. Hanlon, 150 F.3d at 1020.

Amazon asserts plaintiff's rounding claim is unique to her because she claims she was told to clock-in five minutes before the stand-up meeting by her supervisor and asserts this "authorized attendance" does not extend to the class as a whole. Defendants delve too far into the merits to defeat certification on this issue. The record demonstrates that Amazon had a clock-in/clock-out grace period that extended to all employees within the proposed class that arguably authorizes employees to be on premises five minutes before the shift starts and five minute after the shift ends on-the-clock without compensation. Regardless of whether other shift managers told their employees to clock-in early, the Amazon policy to not pay for the prior-to-shift grace period minutes while arguably punishing the post-shift start time grace period minutes makes the absent class members claims co-extensive with plaintiff's claims. The Court should find this factor met for the rounding class.

As to the unpaid break class, in addition to the individualized inquiry required as to why the 30-minute breaks were not offered, defendants assert plaintiff herself suffered no such injury and thus her claim is atypical of the class. However, plaintiff asserts she was shorted 2.04 hours due to shortened meal periods. Thus, the Court should find this factor met as to the unpaid break

class.[6]

D. Representation

> To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them. See Hansberry v. Lee, 311 U.S. 32, 42-43, 85 L. Ed. 22, 61 S. Ct. 115 (1940). Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class? See Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978).

Hanlon, 150 F.3d at 1020.

Class counsel must additionally satisfy the requirements set forth in Fed. R. Civ. P. 23(g)(l) and (g)(4). See Fed. R. Civ. P. 23(g)(2). Rule 23(g)(4) provides that "[c]lass counsel must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

No conflicts of interest are demonstrated on the record and plaintiff and her counsel have vigorously prosecuted this action thus far. Class counsel has experience in wage and hour cases and class actions. The Court should find this factor met for both the rounding class and the unpaid break class.

E. Predominance

As noted above, the Court should find that common questions of law and fact predominate as to the rounding class.

In addition, the superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case. Hanlon, 150 F.3d at 1023. This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution. Id.

---

[6] If the Court disagrees as to the Maza issue, the certification issue may need to be revisited, should defendants prevail on the summary judgment motion regarding the meal break issue currently pending.

Page 16 – FINDINGS AND RECOMMENDATION

Defendants again focus on the purported individualized inquiry required to determine whether each proposed class member performed work to demonstrate the lack of efficiency gained through a class action. However, as noted above, the question of whether attendance during the grace periods was authorized applies broadly to the entire class and resolution of this issue via class action is more efficient than individualized actions.

Defendants also note that a similar proposed class action has been brought by Canan Schumann in case No. 3:20-cv-1751-JR. That case demonstrates that the proposed class members do have an interest in controlling their own litigation. The only difference in the two actions with respect to the rounding class is the alleged violations period with plaintiff here seeking coverage for violations up to April 15, 2019, and Schumann seeking certification for violations after that date. While this may indicate that there is one other plaintiff wishing to control their litigation, both seek class status and as noted above, resolution of the rounding class claim on a class basis is more efficient. The Court will address whether the Schumann case should be dismissed or stayed in a separate findings and recommendation addressing a motion to dismiss in that case. The existence of the Schumann case is insufficient to counsel against certification. Both this case and Schumann are pending before the undersigned. If appropriate, the Schumann case can be consolidated with this case for certain purposes including dispositive motions on the legality of the policies at issue. The Court should find the predominance factor has been met for the rounding class.

Absent retroactive application of Maza, however, the Court should find this factor has not been met for the unpaid break class.

CONCLUSION

Plaintiff's motion for class certification (ECF 61) should be granted in part. The Court should certify the rounding class as consisting of all current and former Amazon employees who performed work in Oregon "fulfillment center" facilities (i.e., excluding data center employees), in any workweek the regular payday for which was on or after December 20, 2012 and on or before April 15, 2019, during which they lost time due to Amazon's rounding policy, who do not file a timely request to opt-out of the Class. The Court should decline to certify plaintiff's proposed unpaid breaks class.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 19th day of July, 2021.

                 /s/ Jolie A. Russo
                 JOLIE A. RUSSO
                 United States Magistrate Judge